IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KANDANCE A. WELLS, | § | |
| Plaintiff, | § | |
| v. | § | Civil Action No. 3:20-CV-2849-S-BH |
| | § | |
| YOUTUBE, LLC, | § | |
| Defendant. | § | Referred to U.S. Magistrate Judge[1] |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Before the Court is *YouTube's Rule 12(b)(6) Motion to Dismiss the Complaint*, filed October 27, 2020 (doc. 10). Based upon the relevant filings and applicable law, the motion should be **GRANTED**.

## I. BACKGROUND

On September 14, 2020, Kandance A. Wells (Plaintiff) filed suit against YouTube, LLC (Defendant), alleging violations of the Consumer Product Safety Act (CPSA), the Federal Trade Commission Act (FTCA), and the "statutes preventing unfair competition, deceptive acts under tort law, and/or the deregulation of trade/trade practices." (*See* doc. 3 at 1.)[2] She contends that her image was posted on Defendant's website in order to threaten her, that the image has been viewed millions of times, that she has "witnessed such threats/perceived threats" as a result, and that the threats caused her social, emotional, physical, mental, and monetary harm. (*Id.* at 5.) She seeks $504,000,000 in monetary damages. (*Id.* at 1.)

On October 27, 2020, Defendant moved to dismiss this action under Rule 12(b)(6), alleging immunity and failure to state a claim. (doc. 10.) Plaintiff filed her response on November 3, 2020

---

[1] By *Special Order 3-251*, this *pro se* case has been referred for full case management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations on dispositive motions.

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

(doc. 17), Defendant replied on November 17, 2020 (doc. 19), and Plaintiff filed a sur-reply without leave of court on November 30, 2020 (doc. 24). The motion is ripe for recommendation.

## II. RULE 12(b)(6)[3]

Defendant moves under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss all of the claims asserted against it in Plaintiff's complaint. (docs. 10, 11.)

## A. <u>Legal Standard</u>

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). It is well-established that "*pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981). Nonetheless, regardless of whether the plaintiff is proceeding *pro se* or is represented by counsel, pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and

---

[3]Plaintiff argues that Defendant's Rule 12(b)(6) motion must be denied because it was not filed within 21 days from the date the complaint was filed as required under Local Rule 7.1(e) of the Local Rules for the Northern District of Texas. (doc. 17 at 1.) Local Rule 7.1(e) provides that "[a] response and brief to an opposed motion must be filed within 21 days from the date the motion is filed." It does not apply to the filing of a complaint. To the extent that Plaintiff's argument may be liberally construed as claiming untimeliness under Rule 12(a)(1)(A)(i) of the Federal Rules of Civil Procedure, which provides that a responsive pleading must be made "within 21 days after being served with the summons and complaint," it lacks merit because Defendant's motion was filed 20 days after service of Plaintiff's complaint. (*See* doc. 9.) Even if untimely, the motion could still be considered under Rule 12(c). *See Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (courts may construe an untimely 12(b)(6) motion as a 12(c) motion for judgment on the pleadings based on a failure to state a claim).

'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678.

## B.    Immunity Under the Communications Decency Act

Defendant argues that it is immune from suit under the Communications Decency Act (CDA), 47 U.S.C. § 230. (doc. 11 at 8.)[4]

---

[4]"Preemption/immunity under the CDA is an affirmative defense." *A.R.K. v. La Petite Acad.*, No. SA-18-CV-294-XR, 2018 WL 2059531, at *1 (W.D. Tex. May 2, 2018) (citation omitted). Although affirmative defenses are generally not appropriate grounds on which to dismiss a claim under a Rule 12(b)(6) motion, the Fifth Circuit has held that "[i]f, based on the facts pleaded and judicially noticed, a successful affirmative defense appears, then dismissal under Rule 12(b)(6) is proper." *Hall v. Hodgkins*, 305 F. App' 224, 227-28 (5th Cir. 2008) (per curiam) (citing *Kansa Reinsurance Co., Ltd. v. Cong. Mortgage Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994)); *see, e.g, Klayman v. Zuckerberg*, 753 F.3d 1354, 1357 (D.C. Cir. 2014) ("Preemption under the Communications Decency Act is an affirmative defense, but it can still support a motion to dismiss if the statute's barrier to suit is evident from the face of the complaint."). Here, because the requirements of § 230 immunity appears on the face of Plaintiff's complaint, this affirmative defense may be properly considered for purposes of Defendant's motion to dismiss. *See id.*; *see, e.g., Doe*

The CDA provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1).  It further provides that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." *Id.* § 230(e)(3).  "By its plain text, § 230 creates federal immunity to any cause of action that would make internet service providers liable for information originating with a third-party user of the service." *Diez v. Google, Inc.*, 831 F. App'x 723, 724-25 (5th Cir. 2020).  "Courts have construed the immunity provisions in § 230 broadly in all cases arising from the publication of user-generated content." *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) (citing cases); *see Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1321 (11th Cir. 2006) ("The majority of federal circuits have interpreted the CDA to establish broad 'federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service.'") (citation omitted).  A defendant is entitled to immunity under § 230(c) if: (1) the defendant is a "provider or user of an interactive computer service;" (2) the asserted claims are based on "information provided by another information content provider;" and (3) the asserted claims treat the defendant "as the publisher or speaker of that information." *See* 47 U.S.C. § 230(c)(1); *see also La'Tiejira v. Facebook, Inc.*, 272 F. Supp. 3d 981, 993 (S.D. Tex. 2017) (citations omitted); *GW Equity LLC v. Xcentric Ventures LLC*, No. CIV.A.3:07-CV-976-O, 2009 WL 62173, at *15 (N.D. Tex. Jan. 9, 2009) (citation omitted).

### 1.    *Interactive Computer Service*

An "interactive computer service" is "any information service, system, or access software

---

*v. Bates*, No. 5:05-CV-91-DF-CMC, 2006 WL 3813758, at *9 (E.D. Tex. Dec. 27, 2006) (finding § 230 immunity defense was properly raised in a Rule 12(b)(6)).

provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the internet...." 47 U.S.C. § 230(f)(2). "Courts typically have held that internet service providers, website exchange systems, online message boards, and search engines fall within this definition." *Fed. Trade Comm'n v. LeadClick Media, LLC*, 838 F.3d 158, 174 (2d Cir. 2016) (citing cases); *see MCW, Inc. v. Badbusinessbureau.com, L.L.C.*, No. CIV.A.3:02-CV-2727-G, 2004 WL 833595, at *9 (N.D. Tex. Apr. 19, 2004) ("Reviewing courts have construed the term 'interactive computer service' rather broadly, finding that web hosts are recognized as providers of interactive computer services.").

Here, Plaintiff's complaint contends that Defendant's website is "a public internet platform" that members of the public visit. (doc. 3 at 5.) Courts in other districts have found that Defendant is an "interactive computer service." *See, e.g., Lewis v. Google LLC*, 461 F. Supp. 3d 938, 954 (N.D. Cal. 2020), *aff'd by* 2021 WL 1423118 (9th Cir. Apr. 15, 2021) (citing cases) ("There does not appear to be any dispute that YouTube and Google are providers of an interactive computer service."); *Lancaster v. Alphabet Inc.*, No. 15-CV-05299-HSG, 2016 WL 3648608, at *3 (N.D. Cal. July 8, 2016) ("The Court finds, and Plaintiff appears to concede, that YouTube and Google are 'interactive computer services.'"). The first element has been satisfied.

## 2.    *Information Content Provider*

As discussed, the second element of immunity under § 230(c) requires that the claims are all based on content provided by another information content provider. An "information content provider" is "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3). "The distinction between merely publishing information provided

5

by a third-party as an interactive computer service and actually creating or developing any of the information posted as an information content provider is critical." *MCW, Inc.*, 2004 WL 833595, at *8. "To demonstrate that a service provider exceeded its traditional publisher role and thus forfeited its CDA immunity, a plaintiff must do more than allege that the provider *continued to publish* content provided by a third party; she must plausibly allege that the provider itself *authored or created* the content." *La'Tiejira*, 272 F. Supp. 3d at 994 (emphasis original); *see also LeadClick Media, LLC*, 838 F.3d at 174 (explaining that a provider of an interactive computer service is not responsible for information posted "unless it assisted in the development of what made the content unlawful"); *F.T.C. v. Accusearch Inc.*, 570 F.3d 1187, 1199 (10th Cir. 2009) ("[A] service provider is 'responsible' for the development of offensive content only if it in some way specifically encourages development of what is offensive about the content."). "The Fifth Circuit has barred claims that hold internet service providers liable for failure to monitor, screen, or delete third-party-generated content." *McMillan v. Amazon.com, Inc.*, 433 F. Supp. 3d 1034, 1045 (S.D. Tex. 2020) (citing *MySpace, Inc.*, 528 F.3d at 420). Ultimately, "the immunity analysis turns on who was responsible for the specific harmful material at issue, not on whether the service provider was responsible for the general features and mechanisms of the service or other content (such as advertisements) that might also have appeared on the service." *Doe v. Bates*, No. 5:05-CV-91-DF-CMC, 2006 WL 3813758, at *17 (E.D. Tex. Dec. 27, 2006).

Here, Plaintiff alleges that an image of her was posted on Defendant's website and that it was also viewable "on other social media/public forums." (doc. 3 at 5.) She does not allege that Defendant itself had posted her image on its website or any other website, and she does not dispute that the provider of her image was a third party. *See, e.g., La'Tiejira*, 272 F. Supp. 3d at 994

("La'Tiejira fails to allege a single fact suggesting that the Facebook Defendants authored the offending posts. Therefore she has not and cannot allege that Facebook acted as an 'information content provider' with respect to these posts and her claims against the Facebook defendants are barred by the CDA."). While Plaintiff's complaint alleges that an unnamed entity received "monies" for posting her image "in [a] publically derogatory manner causing extreme threats of danger to plaintiff," she fails to allege that Defendant contributed to the creation or development of the "derogatory" image that is alleged to have injured her. (*See* doc. 3 at 5); *see, e.g., Bates*, 2006 WL 3813758, at *17 (holding that because the complaint "affirmatively asserts that someone other than Defendant created and developed the particular unlawful and injurious photographs at issue in this case, those photographs as a matter of law constitute 'information provided by another information content provider'"). The second element is therefore satisfied.

### 3.    *Treatment as a Publisher or Speaker*

The third element of immunity under § 230(c) is met if the plaintiff is seeking to hold the defendant liable as a publisher or speaker of information originating from a third-party. The Fifth Circuit has made clear that § 230(c) is "Congress's grant of 'broad immunity' to internet service providers '*for all claims stemming from their publication* of information created by third parties,' which we and other circuits have consistently given a wide scope." *Google, Inc. v. Hood*, 822 F.3d 212, 220-21 (5th Cir. 2016) (quoting *MySpace, Inc.*, 528 F.3d at 418) (emphasis added). "The expansive scope of CDA immunity has been found to encompass state tort claims, alleged violations of state statutory law, requests for injunctive relief, and purported violations of federal statutes not specifically excepted by § 230(e)." *Hinton v. Amazon.com.dedc, LLC*, 72 F. Supp. 3d 685, 689 (S.D. Miss. 2014) (citing cases).

Here, Plaintiff is suing Defendant for "violations to [her] personal safety as a general consumer" under the CPSA, the FTCA, and the "statutes preventing unfair competition, deceptive acts under tort law, and/or the deregulation of trade/trade practices" based on the allegedly derogatory image of her that is posted on Defendant's website. (*See* doc. 3 at 1.)  All her claims against Defendant treat it as the publisher of that image. *See, e.g., Hinton*, 72 F. Supp. 3d at 690 (quoting *MySpace*, 528 F.3d at 418) ("[T]he Court finds that all of the Plaintiff's claims against eBay arise or 'stem[ ] from the [ ] publication of information [on www.ebay.com] created by third parties....'"); *Klayman*, 753 F.3d at 1359 ("[I]ndeed, the very essence of publishing is making the decision whether to print or retract a given piece of content—the very actions for which Klayman seeks to hold Facebook liable.").  Accordingly, the third and final element is satisfied.

Defendant's affirmative defense may be considered under its motion to dismiss because all of the elements of immunity under § 230(c) are undisputed and appear on the face of Plaintiff's complaint. *See Hall*, 305 F. App'x at 227-28.  Notably, Plaintiff did not respond to Defendant's argument that dismissal of all her claims is warranted because § 230(c) provides it immunity. *See Arias v. Wells Fargo Bank, N.A.*, No. 3:18-CV-00418-L, 2019 WL 2514998, at *7 (N.D. Tex. June 18, 2019) ("When a plaintiff fails to defend a claim in response to a motion to dismiss or summary judgment motion, the claim is deemed abandoned.") (citing *Black v. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006)).  Because all elements of immunity under § 230(c) are undisputed and satisfied, Plaintiff's claims against Defendant are barred and should be dismissed with prejudice. *See, e.g., MySpace, Inc.*, 528 F.3d at 422 ("[Plaintiffs' negligence and gross negligence claims are barred by the CDA, which prohibits claims against Web-based interactive computer services based on their publication of third-party content."); *Inge v. Walker*, No. 3:16-CV-0042-B, 2017 WL

4838981, at *4 (N.D. Tex. Oct. 26, 2017) ("As an interactive computer service, CMRA is immune from liability for defamatory posts made by its online forum's users.").[5]

### III.  SANCTIONS

In her response to Defendant's motion to dismiss, Plaintiff cites to Rule 11(b)(1), stating that she considers the motion "a personal attack rather than a denial of specified allegations." (doc. 17 at 1.)[6]

Rule 11(b)(1) states that by submitting a written document to the court, the filing party certifies that to the best of its knowledge after making a reasonable inquiry, that the written document was not filed for an "improper purpose such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1). Rule 11(c)(2) requires that a motion for sanctions be filed separately from any other motion or document.  In addition, Plaintiff does not seek any relief that could be liberally construed as a request for sanctions based on the motion.  Her perception of Defendant's motion as "harassing in nature" appears to be based on the conduct underlying her claims.  Accordingly, her filing is not liberally construed as a motion for

---

[5]Defendant also moves to dismiss Plaintiff's claims on grounds that she failed to identify a Consumer Product Safety Commission rule or order that it allegedly violated, and that her remaining claims fail as a matter of law for lack of factual allegations in support of each cause of action. (*See* doc. 11 at 12-16.) Because Plaintiff's claims are subject to dismissal based on immunity under § 230(c), it is unnecessary to reach these arguments.

[6]Because Plaintiff is proceeding *pro se*, her pleadings are to be provided "a liberal construction." *Brown v. Sudduth*, 675 F.3d 472, 477 (5th Cir. 2012).  As a general rule, claims and allegations that are not raised in the complaint, but rather raised for the first time in a response to a motion to dismiss are not properly before the court. *See Hearn v. Deutsche Bank Nat. Trust Co.*, 3:13-CV-2417-B, 2014 WL 4055473, *4 n. 3 (N.D. Tex. Aug. 15, 2014).  Nevertheless, the Fifth Circuit has held that courts should construe new allegations and theories in responses to dispositive motions as motions to amend. *Cash v. Jefferson Assocs., Inc.*, 978 F.2d 217, 218 (5th Cir. 1992) (deciding that a response to a motion to dismiss in which plaintiff first alleged that she had been willfully discriminated against should be treated as a motion to amend); *see also Debowale v. U.S. Inc.*, 62 F.3d 395 (5th Cir. 1995) (per curiam) (holding that "[t]he district court should have construed [the plaintiff's] *Bivens* claim, raised for the first time in his response to the summary judgment motion, as a motion to amend the complaint under [Rule] 15(a) and granted it").  "This is particularly true where ... the litigant is *pro se* and has not yet made any amendments to her complaint." *Riley v. Sch. Bd. Union Par.*, 379 F. App'x 335, 341 (5th Cir. 2010).  Accordingly, Plaintiff's allegations and claims in her response to Defendant's motion to dismiss are construed as a motion to amend, the motion is granted, and the new claims and allegations are considered.

sanctions under Rule 11. To the extent that Plaintiff did intend to file a motion under Rule 11, she must file one that complies with the rule's requirements.[7]

### IV. OPPORTUNITY TO AMEND

Notwithstanding their failure to plead sufficient facts, the Fifth Circuit is inclined to give *pro se* plaintiffs several opportunities to state a claim upon which relief can be granted. *See Scott v. Byrnes*, No. 3:07-CV-1975-D, 2008 WL 398314, at *1 (N.D. Tex. Feb. 13, 2008); *Sims v. Tester*, No. 3:00-CV-0863-D, 2001 WL 627600, at *2 (N.D. Tex. Feb. 13, 2001). Courts therefore typically allow *pro se* plaintiffs to amend their complaints when the action is to be dismissed pursuant to a court order. *See Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 3:96-CV-2923-D, 2004 WL 789870, at *2 (N.D. Tex. Apr. 12, 2004); *Sims*, 2001 WL 627600, at *2. A *pro se* plaintiff may also obtain leave to amend his complaint in response to a recommended dismissal. *See Swanson v. Aegis Commc'ns Grp., Inc.*, No. 3:09-CV-0041-D, 2010 WL 26459, at * 1 (N.D. Tex. Jan. 5, 2010); *Scott*, 2008 WL 398314, at *1. "When a plaintiff is given an opportunity to amend a complaint that fails to state a claim upon which relief can be granted, but refuses to do so, then the district court is justified in dismissing the complaint with prejudice." *Rodriguez v. United States*, 66 F.3d 95, 98 (5th Cir. 1995). Additionally, a court may appropriately dismiss an action with

---

[7]In addition to her response to Defendant's motion to dismiss, Plaintiff also filed a sur-reply without leave of court. (doc. 24.) The Local Civil Rules do not contemplate sur-replies. *See Comstock v. City of Balch Springs*, No. 3:17-CV-344-B, 2017 WL 2791113, at *1 (N.D. Tex. May 18, 2017). "'[S]ur-replies are 'highly disfavored' and are permitted only in 'exceptional or extraordinary circumstances.'" *Highmark, Inc. v. Allcare Health Management Systems, Inc.*, No. 4:03-CV-1384-Y (N.D. Tex. Sept. 29, 2015) (citing *Lacher v. West*, 147 F. Supp. 2d 538, 539 (N.D. Tex. 2001)). A sur-reply is appropriate only when the movant attempts to present new evidence at the reply stage and the respondent seeks leave of court to file one. *Brackens v. Dallas Indep. School Dist.*, No. 3:09-CV-642-D, 2010 WL 5464823, at *5 (N.D. Tex. Sept. 20, 2010). Because Plaintiff did not seek leave to file it, her sur-reply was not considered. *See Neely v. Khurana*, No. 3:07-CV-1344-D, 2009 WL 1605649, at *3 n.4 (N.D. Tex. June 5, 2009). Even if considered, however, it would not have changed the findings or ultimate recommendation on Defendant's motion to dismiss. Although Plaintiff's sur-reply also alleges violations of the Digital Millennium Copyright Act, even if liberally construed as a motion for leave to amend, the motion would be subject to denial as futile because immunity under § 230(c) would also shield Defendant from liability for those alleged violations.

10

prejudice without giving an opportunity to amend if it finds that the plaintiff has alleged his or her

best case. *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999).

Here, all of Plaintiff's claims in this suit are barred by immunity under § 230(c).

Accordingly, she has alleged her best case, and no further opportunity to amend her claims against

Defendant is warranted.

## V.  RECOMMENDATION

Defendant's motion to dismiss should be **GRANTED**, Plaintiff's request for sanctions

should be **DENIED**, and all of her claims against Defendant should be **DISMISSED with**

**prejudice**.

**SO RECOMMENDED** on this 17th day of May, 2021.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

11